■ 2619 REALTY, LLC, Respondent, v FIDELITY AND GUARANTY INSURANCE COMPANY, Appellant. [756 NYS2d 564] —Order, Supreme Court, Bronx County (Jerry Crispino, J.), entered September 21, 2001, which denied defendant's motion for summary judgment dismissing the complaint, and granted, in part, plaintiff's cross motion for summary judgment, unanimously reversed, on the law, without costs, plaintiff's cross motion denied, defendant's motion granted, and it is declared that defendant is not required to defend or indemnify plaintiff in the underlying action. The Clerk is directed to enter judgment accordingly.

Defendant Fidelity and Guaranty Insurance Company (Fidelity) issued a "Lead-Based Paint Liability Insurance Policy" (the Policy), covering the relevant time period, under which plaintiff 2619 Realty, LLC (2619 Realty) is listed as an additional insured. Michael Marcial, an infant, by his mother and natural guardian, Ignacia Pacheco, commenced the underlying lead-paint poisoning/negligence action by the service of a summons and verified complaint on or about October 26, 1999. In the underlying action, Marcial contends, inter alia, that 2619 Realty owned the apartment in question when the infant visited and ingested lead paint. Fidelity subsequently disclaimed coverage on the ground that the Policy afforded lead-based paint bodily injury coverage to "tenants" and that Marcial was not a tenant as that term is defined in the Policy. This declaratory judgment action ensued.

A tenant is defined in the Policy as "anyone who is lawfully residing in a leased unit or apartment of the insured building * * *. " The Policy further provides that "[a] person is lawfully residing in a unit or apartment if: a) He or she is in compliance

with the terms of a written lease with the named insured; and b) He or she is a permanent resident of such unit or apartment during the term of the lease." A permanent resident "means anyone lawfully residing in a unit or apartment as his or her sole dwelling." The Policy does not define "sole dwelling."

Fidelity, in disclaiming coverage and in moving for summary judgment, argued that the infant plaintiff was not a permanent resident of the apartment as that term is defined in the Policy. Fidelity relied upon the plaintiff's own pleadings in the underlying action, which state that the infant only "on occasion[s] stayed" at the insured building, and that the infant plaintiff was a primary resident in another building owned by a defendant in the underlying action. Plaintiff cross-moved for summary judgment, asserting that the phrase "sole dwelling" was undefined and indefinite in scope and as a result, an ambiguity exists as to whether the infant was a tenant under the terms of the Policy. The motion court held, inter alia, that "the undefined term of sole dwelling creates possible interpretation [*sic*] which cannot as a matter of law, exclude coverage." We disagree and reverse.

Our analysis must be guided by the well-established principles governing the interpretation of insurance contracts, which provide that the unambiguous provisions of an insurance policy, as with any written contract, must be accorded their plain and ordinary meaning (*West 56th St. Assoc. v Greater N.Y. Mut. Ins. Co.*, 250 AD2d 109, 112 [1998]; *Mazzuoccolo v Cinelli*, 245 AD2d 245, 246-247 [1997]). The interpretation of such provisions is a question of law for the court (*Chimart Assoc. v Paul*, 66 NY2d 570, 572-573 [1986]; *Mazzuoccolo v Cinelli, supra* at 247), and a court is not free to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation" (*Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]; *see also Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 520 [1996]; *Roundabout Theatre Co. v Continental Cas. Co.*, 302 AD2d 1, 6 [2002]). Nevertheless, if there is ambiguity in the provisions of the policy, any doubt as to the existence of coverage must be resolved in favor of the insured and against the insurance carrier as drafter of the agreement (*Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334, 339 [2000]; *United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [1986]; *Roundabout Theatre Co. v Continental Cas. Co., supra* at 6).

Contrary to the ruling of the motion court, the language of the policy in question, in our view, clearly and unambiguously provides that in order for coverage to be triggered, the insured

premises must be the injured party's sole dwelling, i.e., that individual's "exclusive" residence (*see* Webster's Collegiate Dictionary 1114 [10th ed 2002]; *see also Mazzola v County of Suffolk*, 143 AD2d 734, 735 [1988] ["it is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract"]). The fact that plaintiff readily proclaims in the complaint in the underlying action that he only occasionally visited the insured premises and maintained a primary residence elsewhere is sufficient to take the claim outside of the parameters of the policy's coverage. Concur—Nardelli, J.P., Tom, Lerner, Marlow and Gonzalez, JJ.